UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
CARLOS GUTEMBERG DE OLIVEIRA;    :
CHIZURUM LUCKY OKEREKE; MARIA    :
CAMILA RODRIGUEZ RAMIREZ;    :
ABDULGAFAR OLATUNJI JAJI; MARIJA   :   MEMORANDUM & ORDER
KNEZEVIC; ANNA SERGEYEVNA    :
STEPANOVA; OLEG NIKOLAYEVICH   :   19-CV-1508 (ENV)
LEVCHENKO; ANDREI VASILYEVICH   :
PETROV; RAFAEL MAZZUCO MOTTA;   :
WALDEMIR PEPEIRA SOARES JUNIOR; DAVI :
JORGE DE VASCONCELOS SOUZA,    x

Plaintiffs,

-against-

WILLIAM BARR, Attorney General of the United
States, KEVIN MCALEENAN, Acting Secretary of
the Department of Homeland Security, KENNETH
T. CUCINELLI, Acting Director, U.S. Citizenship
and Immigration Services, and JENNIFER B.
HIGGINS, Associate Director, Refugee, Asylum
and International Operations Directorate, in their
official capacities,

Defendants.
-------------------------------------------------------------
VITALIANO, D.J.

      In a complaint filed on March 15, 2019, plaintiffs, all asylum applicants, allege that delayed

adjudication of their asylum applications violates the Immigration and Nationality Act ("INA"),

Administrative Procedure Act ("APA"), and the Due Process Clause.  Dkt. 1, Compl. ¶ 37.  They

bring suit against William Barr, in his capacity as Attorney General of the United States; Kevin

McAleenan, in his capacity as acting secretary of the Department of Homeland Security; Kenneth

T. Cucinelli, in his capacity as the acting director of United States Citizenship and Immigration

Services ("UCIS"); and Jennifer B. Higgins, in her capacity as the Associate Director of Refugee,

Asylum and International Operations.[1]   Compl. ¶¶ 18-21.   Plaintiffs seek an order directing defendants "to schedule plaintiffs' asylum interviews."   *Id.* at ¶ 2.   On September 16, 2019, defendants moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b), for lack of subject-matter jurisdiction or in the alternative, failure to state a claim.   Dkt. 8, Def. Mot.   For the reasons set forth below, the motion to dismiss is granted.

## Background

INA, within one year of arrival in the United States, permits noncitizens to apply for asylum.   § 8 U.S.C. 1158(a).   The processing of such applications is regulated, in part, by §§ 1158(d)(5)(ii) and (iii), which state, respectively, that "the initial interview or hearing on the asylum application shall commence no later than 45 days after the date an application is filed" and that the "final adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed."   The statute erects a guardrail to protect agency processing, providing that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."   8 U.S.C. § 1158(d)(7).

In the application processing procedure it has adopted, the agency typically utilizes a scheduling system, known as "Last-In-First-Out" ("LIFO"), where newer filings are reviewed before other pending applications.   Dkt. 14, Lafferty Decl. at 6.   According to Division Chief Lafferty, Chief of the USCIS Asylum Division, LIFO "is a critical element in slowing the growth of the pending application caseload and effectively processing all pending asylum applications by eliminating the incentive to file frivolous, fraudulent or otherwise non-meritorious asylum

---

[1] The Clerk of Court is directed to update the caption to the officials serving in these roles as of the date of entry.

applications solely to obtain employment authorization." *Id.* at 8-9.  A system that prioritizes newer applications enables the USCIS to detect fraudulent asylum claims before an individual is approved to work in the United States.  8 C.F.R. § 208.7(a)(1) (A request for work authorization must be submitted within "150 days after the date on which a complete asylum application [is] submitted" and the government has 30 days to issue a decision.)  Of note, while his or her asylum application is being processed a noncitizen may apply for work authorization.   8 C.F.R. § 208.7(a)(1).

Each of the aggrieved asylum-seeking plaintiffs filed an I-485 Application for Permanent Resident Status sometime between July 10, 2015 and November 14, 2018.  *Id.* ¶¶ 25-35.  Each application was not scheduled for an interview within the 45-day time and, consequently, none have received final adjudication within the 180-day period specified in § 1158(d)(5)(A)(ii)-iii).  *Id.* ¶¶ 40-42.

<u>Legal Standard</u>

A plaintiff in a federal action must establish that the Court has subject matter jurisdiction over the action.  Consequently, when a party moves to dismiss, as defendants do here, under both Rules 12(b)(1) and 12(b)(6), the court addresses the threshold issue of subject matter jurisdiction first.  *Sherman v. Black*, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007) (citing *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).  Turning to the threshold issue, it is black letter law that "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  In determining the existence of

subject matter jurisdiction, a district court may consider evidence outside the pleadings. *Makarova*, 201 F.3d at 113.

Assuming arguendo that subject matter jurisdiction has been established, to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). On a Rule 12(b)(6) motion, a court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).[2]

<u>Discussion</u>

I.    <u>Subject Matter Jurisdiction</u>

   *A.    The Mandamus Act*

The Mandamus Act empowers district courts to exercise "original jurisdiction to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the

---

[2] The court does not address any claims against the policies and procedures of the USCIS, which were raised, improperly, for the first time in plaintiffs' briefing on this motion. Dkt. 15, Opp'n. "The plaintiffs may not use briefing on a motion to dismiss to raise new claims." *Ruan v. Wolf*, 19-cv-4063 (ARR) (RER), 2020 WL 639127, at *3 n.4 (E.D.N.Y. Feb. 11, 2020) (citing *Kiryas Joel Alliance v. Village of Kiryas Joel*, No. 11 Civ. 3982 (JSR), 2011 WL 5995075, at *5 (S.D.N.Y. Nov. 29, 2011), *aff'd*, 495 F. App'x 183 (2d Cir. 2012)). For purposes of completeness, though, the Court observes without deciding that plaintiffs admittedly lack standing to challenge USCIS's policy decisions which are properly left in the orbit of administrative agencies. *See Vt. Yankee Nuclear Power Corp. v. Nat. Resources Def. Council,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

plaintiff." 8 U.S.C. § 1361. Defendants assert that the district court is stripped of jurisdiction to hear mandamus claims in this context because § 1158(d)(7) precludes a private right of action to enforce the deadlines set forth in the immigration statute. Def. Mot. at 15. Section 1158(d)(7) states that "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." While defendants' argument that the timelines specified in § 1158(d) are not legally enforceable is persuasive, the preclusion of a private right of action does not oust the district court of its mandamus jurisdiction.

But, § 1158(d)(7) must be read harmoniously with other Mandamus Act provisions. *See U.S. v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000) (internal citations omitted) ("[W]e must interpret [a] specific provision in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part.") Approached with this understanding, interpretations of the section's language must be consonant with the fact that there is clear contrast between provisions within the Mandamus Act where Congress *did* specify that a court would lack jurisdiction to review a determination or finding, and § 1158(d), the reach of which is undiminished by any such abridging language. *See, e.g.*, 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2).") In § 1158(d), it is clear that "Congress deliberately used different language." *L.M. v. Johnson*, 150 F.Supp.3d 202, 210 (E.D.N.Y. 2015) (internal quotations omitted); *see also Ruan v. Wolf*, 19-cv-4063 (ARR) (RER), 2020 WL 639127, at *3-4 (E.D.N.Y. Feb. 11, 2020). More particularly, although § 1158(d)(7) expressly disclaims a private right of action to enforce deadlines as set forth in the statute, it does not specify, as in § 1158(a)(3), that a court would lack jurisdiction to review the processing of asylum applications.

B.      *Administrative Procedure Act*

Employing their diverse litigation arsenal, plaintiffs also seek an order to compel agency action pursuant to 18 U.S.C. § 1331 for violations of the APA. Compl. ¶¶ 22. The Court has jurisdiction to hear claims that arise under the APA pursuant to federal question jurisdiction. *Ruan*, 2020 WL 639127, at *4 ("[W]here a plaintiff alleges that the defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to section 1331.") (internal quotations omitted); *see also Clark v. Commodity Futures Trading Commission,* 170 F.3d 110, 113 n. 1 (2d Cir.1999) ("The APA does not . . . itself confer jurisdiction to review the decision of an administrative agency.") Regardless whether the agency action aggrieving a plaintiff arises under a statute not providing a right of action or even, as the government contends here, arises out of a statute barring a private right of action, the Court's federal question jurisdiction exists nonetheless because it is based on specific provisions of the APA. *Fangfang Xu v. Cissna*, 19 Civ. 2584 (KPF), 2020 WL 240839, at *4-5 (S.D.N.Y. Jan. 16, 2020). Plaintiffs' allege that defendants did not comply with the requirements of the APA to conclude a matter "within a reasonable time" as required by 5 U.S.C. § 555(b) and that the Court may compel "agency action unlawfully withheld or unreasonably delayed" as specified in 5 U.S.C. § 706(1). Compl. ¶¶ 22. The Court retains jurisdiction despite the renunciation of a private right of action to enforce the statutory deadlines in § 1158(d)(7).

Indeed, APA's judicial grant of authority is only restricted where "statutes preclude judicial review; or agency action is *committed to agency discretion by* law." *Id*. at § 701(a). While § 1158(d)(7) does not preclude the Court from judicial review, "the 'only agency action that can be compelled under the APA is action legally required.'" *L.M.*, 150 F.Supp.3d at 212 (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 (2004)). Perplexingly circular, defendants

also contend that the time period and any other duties owed to plaintiffs under § 1158(d) are discretionary because the provisions are not legally enforceable.  Def. Mot. at 15.  This falls short. "Even without a binding statutory or regulatory deadline, USCIS's obligation to adjudicate asylum applications means that at some point defendants' failure to take any action runs afoul of section 555(b)." *Ruan*, 2020 WL 639127, at *3-4.  As a consequence, such defendants have a non-discretionary duty to adjudicate plaintiffs' asylum applications under the APA; jurisdiction is retained to determine whether defendants have met that requirement.  *Id.* (internal quotations omitted).  The Rule 12(b)(1) motion is denied.

II.    <u>Failure to State a Claim</u>

      *A.    Mandamus Claim*

With jurisdiction established, plaintiffs contend that defendants owe plaintiffs a duty to process their asylum applications within the timeframe specified in § 1158(d)(5)(ii) and (iii) of INA.  Compl. ¶¶ 40.  The Mandamus Act allows district courts "to compel an officer or employee of the United States or any agency thereof to perform *a duty owed to the plaintiff*."  28 U.S.C. § 1361 (emphasis added).  In order to obtain relief under the Act, there must be "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen*, 881 F.2d 1, 5, (2d Cir. 1989) (quoting *Lovallo v. Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972)).

But it is here where the tide turns.  The fact that a statute does not strip a district court of mandamus jurisdiction does not by any stretch mean that the statute conveys a right enforceable by mandamus.  Plaintiffs seek to enforce a purported right to have their asylum applications processed within the timeframe set forth in INA.  Yet, they have not established "a clear right"

necessary to obtain relief because the statute explicitly states that applicants do not have a "substantive or procedural right or benefit" to have their applications adjudicated within the specified period.  8 U.S.C. § 1158(d)(7).  An asylum applicant does not have a right to sue "the United States or its agencies or officers or any other person" for failure to comply with the statute's provisions.  *Id.; see also Pesantez v. Johnson*, 15-cv-1155 (BMC), 2015 WL 5475655, at *2 (E.D.N.Y. Sept. 16, 2015) ("It is beyond serious dispute that mandamus pursuant to § 1361 is unavailable to compel compliance with a statutory obligation when the underlying statute expressly disclaims a private right of action.").  The writ of mandamus does not lie.

B.      *The APA Claim*

APA requires that, "within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  Correspondingly, district courts have the authority to compel "agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  The "TRAC" factors" articulated in *Telecommunications Research & Action v. F.C.C.*, 750 F.2d 70, 79-80 (D.C. Cir. 1984) govern whether a delay, under a particular set of facts, is reasonable under APA.  *Hoo Loo v. Ridge*, No. 04-cv-5553 (DLI) (RML), 2007 WL 813000, at * 4 (E.D.N.Y. Mar. 14, 2007).[3]

The asylum seekers here put all their eggs in one basket, relying on the length of delay as

---

[3] Identified as factors the courts might consider are: "(1) the time agencies take to make decisions must be governed by a "rule of reason," (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, (4) the court should consider the effects of expediting delayed action on agency activities of a higher or competing priority; (5) the court should consider the effect of expediting delayed action on agency activities of a high or competing priority; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *Telecommunications Research and Action Center*, 750 F.2d at 80.

the primary reason and, appear to ignore the other TRAC factors.  Compl. ¶¶ 37.  The passage of time, surely, is a consideration under the first TRAC factor – "the time agencies take to make decisions must be governed by a 'rule of reason.'"  *Telecommunications Research & Action*, 750 F.2d at 80.  While some of the plaintiffs in this case have been waiting as long as three and a half years for their asylum applications to be processed, courts have held that longer periods of delay are still reasonable under the APA.  *Gong v. Duke*, 282 F.Supp.3d 566, 568 (E.D.N.Y. Oct. 18, 2017) (citing district court opinions that have concluded delays under four years are reasonable).  According to Division Chief Lafferty, the backlog of cases is a result of an increasing number of asylum applications, controlling the number of fraudulent applicants filed by using a first-in-first-out ("FIFO") approach, and prioritizing the growing number of credible and reasonable fear cases.  Lafferty Decl. at 6-9.  Defendants concede that, given these factors, the USCIS is frequently delayed in processing asylum applications.  *Id.* at 6-9; *Pesantez*, 2015 WL 5475655, at *6 ("Judicial intervention in this case would necessarily involve an intrusion into the defendants' allocation of adjudicatory resources on the whole, and that is something that [the] Court is 'institutionally ill-equipped to do.") (internal quotations omitted).

Futilely, plaintiffs allege that the delayed adjudication of their asylum applications has caused "considerable anxiety and emotional distress."  Compl. ¶ 37.  Certainly, emotional well-being is an additional consideration under the third factor – the impact the delay has on "human health and welfare."  *Telecommunications Research & Action*, 750 F.2d at 79.  Yet, angst in the pursuit of asylum is hardly unique to this batch of applicants.  Effectively, they seek a judicial thumb on the scale to favor them above others with the same complaint.  Recognizing the gambit, district courts have "'refused to grant relief where there would be no net gain,'" even when all the other factors considered in *TRAC* favored it.  *L.M.*, 150 F.Supp.3d at 213; (quoting *Mashpee*

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).  The fact that the plaintiffs experience "anxiety and emotional distress" could just as easily be true for every other noncitizen whose asylum application has been delayed.  Therefore, an order in favor of the plaintiffs would "'put[] the petitioner at the head of the queue . . . [and] move all others back one space,'" resulting in no net gain.  *L.M.*, 150 F.Supp.3d at 213; (quoting *Mashpee*, 336 F.3d at 1100).  "The effect expediting delayed action on processing agency activities" – the fourth TRAC factor – is therefore a significant factor that weighs in favor of defendants.  *Ruan*, 2020 WL 639127, at *6.

In sum, because plaintiffs do not plausibly allege defendants' delay in adjudicating their asylum applications are unreasonable under APA § 1158(d), their claim is dismissed under Rule 12(b)(6).

    C.    *Due Process Clause*

Plaintiffs, finally, argue that defendants' failure to schedule interviews for their asylum applications in accordance with the procedures set forth in § 1158(d) of INA deprived them of due process guaranteed by the Fifth Amendment.  Compl. ¶¶ 6.  While "[a]liens within this country are entitled to due process and "must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner," *Fang Xu*, 2020 WL 240839, at *9 (citing *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007)) (internal citations omitted), plaintiffs still fall short in their quest. Now, there is no dispute about that principle of law.  The applicants here fail in their quest because they have not adequately alleged a due process violation because they have not suffered a deprivation of a right.   Section 1158(d)(7) explicitly bars the creation of any enforceable "substantive or procedural right or benefit."  *L.M.*, 150 F.Supp. 3d at 217; *Fang Xu*, 2020 WL 240839, at *9.  Moreover, the Supreme Court has "long held that an alien seeking initial admission

to the United States requests a privilege and has no constitutional rights regarding his application."

*Landon v. Plasencia*, 459 U.S. 21, 32, 103 S. Ct. 321, 329, 74 L. Ed. 2d 21 (1982).   Therefore

"[t]he government's delay in scheduling or conducting immigration proceedings does not violate

due process."   *Vang v. Gonzales*, 237 F. App'x 24, 31 (6th Cir. 2007); *see also Mudric v. AG of*

*the United States*, 469 F.3d 94, 99 (3d Cir. 2006).

Conclusion

For the reasons discussed above, defendants' motion to dismiss pursuant to Rule 12(b)(1)

is denied but dismissal is granted under Rule 12(b)(6).

While leave to amend is generally freely given, *see Cruz v. Gomez*, 202 F.3d 593, 597-98

(2d Cir. 2000), leave to amend is not warranted "where it is clear from the face of the complaint

that the Court lacks subject matter jurisdiction or that a claim cannot be stated as a matter of law."

*Steele v. Soc. Sec. Admin.*, No. 14-cv-7104 (ENV)(MDG), 2016 WL 4688850, at *3 (E.D.N.Y.

Sept. 7, 2016).   That is the case here.   Leave to amend is denied.   The complaint is dismissed with

prejudice.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated:   Brooklyn, New York
          March 19, 2020

/s/ Eric N. Vitaliano
_____
ERIC N. VITALIANO
United States District Judge